In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2951

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LAMAR CHAPMAN III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 741—**Charles P. Kocoras**, *Judge.*

ARGUED APRIL 5, 2012—DECIDED AUGUST 30, 2012

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Lamar Chapman was convicted by a jury of six counts of forging checks in violation of 18 U.S.C. § 513(a). Chapman would now like to convince us that the government failed to prove his guilt beyond a reasonable doubt. He also asserts that he is entitled to a new trial because the district court improperly admitted a previous forgery conviction. The standard of review he faces for each of these is an

exacting one, however, and he has not convinced us that any reversible error occurred. We therefore affirm.

**I**

Chapman ran into trouble through some work he was doing for North American Herb and Spice (NAHS), a nutritional supplements business located in Lake Forest, Illinois. On the recommendation of their accountant, Art Sutton, NAHS-owner Judy Gray and her husband Bill had hired Chapman in 2003 to help them resolve a tax dispute with the IRS. In the course of that work, Chapman notified the Grays that he needed several cashier's checks. On April 3, 2003, Mr. Gray and Chapman went to the Bank of Highwood to get seven cashier's checks made payable to the "Internal Revenue Service." The next day, Chapman faxed a letter to Mr. Gray stating that the cashier's checks were "made payable to the Internal Revenue Service in the total sum of $109,776.99 to settlement [*sic*] any and all claims in compromise for" their dispute with the IRS. Unbeknownst to the Grays at the time, Chapman sent only four of the cashier's checks to the IRS. He kept the other three, amounting to more than $64,000, for himself, altering the "pay to order" line to substitute his name for that of the IRS.

In 2004, Mrs. Gray signed a limited power of attorney that permitted Chapman to "execute banking applications and to start up proceeding forms and documents" on behalf of NAHS, the International Research Foundation (its former payroll arm), and the Lake Forest Trust

(its former property management entity), among other entities. Mrs. Gray's understanding was that Chapman would use this limited power of attorney to open bank accounts to support the business. Using his new authority, Chapman opened multiple accounts at Fifth Third Bank for NAHS, International Research Foundation, and the Lake Forest Trust. Then on November 13, 2004, Chapman submitted a letter to Fifth Third Bank stating that he was withdrawing his power of attorney for NAHS and its related entities. Mrs. Gray included a note on the letter stating that "[n]o withdrawals are allowed today by [Chapman] until further notice." One month later, on December 14, 2004, Chapman sent a second letter to the bank in an effort to reinstate his power of attorney. The letter included the words "With authorization" and had Mrs. Gray's signature stamp underneath. She testified that she did not sign the letter, did not authorize Chapman's use of the stamp, and had never given Chapman her signature stamp. She was not aware of the letter until 2006. Chapman later informed an investigating agent that he secured a rubber stamp with Mrs. Gray's signature and used it in 2006 to execute checks.

Chapman was dismissed from NAHS in early 2006. At that time, the Grays asked him to return any company documents in his possession. Chapman refused. In April 2007, Mr. Gray spotted some inconsistencies in NAHS's accounts. He contacted his bank, which faxed him copies of two checks. Check 46263, dated April 9, 2007, was drawn from the International Research Foundation's account and was made payable to

the "Clerk of the United States District Court." The memo line said "Filing fees Chapman vs. U.S. Marshals." Check 46264, also dated April 9, 2007, had the same payee, but its memo line said "Filing Fee, Chapman vs. Police Department." Both checks were signed using Mrs. Gray's signature stamp, but neither of the Grays had in fact authorized them. Other unauthorized checks also showed up, including one for $6,500 drawn on the Lake Forest Trust account, again using Mrs. Gray's signature stamp without authorization.

Special Agent Glass of the U.S. Secret Service interviewed Chapman, along with Special Agent William Quelle, in March 2008. Agent Glass interviewed him again in September 2009. In their first meeting, Chapman admitted that he had cashed the three Fifth Third Bank checks. He contended, however, that his actions were authorized by the limited power of attorney. Chapman explained that he wrote and cashed the checks because NAHS owed him money for his work there. Around this time, Chapman deposited the final cashier's check into his account. The federal agents were not aware of the three cashier's checks until the September 2009 meeting. When asked to justify the checks in 2009, Chapman repeated the story that they represented compensation for unpaid work. Shortly thereafter, the government indicted Chapman on six forgery counts for the three cashier's checks and three checks drawn with Mrs. Gray's signature stamp.

It turned out that Chapman's behavior with NAHS was not his inaugural performance. In 2004, he had pleaded

guilty to forging a check intended for the IRS by adding his name to the "payable to" line. In the plea agreement, he admitted to the following:

> [O]n April 14, 1999, defendant deposited check number 1-263823 in the amount of $68,510 into his account at Charles Schwab & Company ("Schwab"). This check was drawn on an account maintained by Stewart Title Company of Illinois at American National Bank and made payable to the "Internal Revenue Service" ("IRS"). This check was generated on behalf of Individuals A and B from the proceeds of a home equity loan they took to pay off debts, including $68,510 in taxes they owed to the IRS. In 1999, Individuals A and B were clients of defendant's consulting business. Defendant agreed to convey this check to the IRS. Instead, on or before April 14, 1999, defendant added "Lamar C. Chapman III for the benefit of Individual A and Individual B" to the payee portion of the check and endorsed it on the back with his signature without the knowledge, authorization or consent of Individuals A and B, Schwab, the IRS or Stewart Title. On April 14, 1999, defendant deposited the check into his Schwab account.

Before trial in the present case, the government moved to admit evidence of this conviction under Federal Rule of Evidence 404(b). The prosecutor argued that the conviction was admissible because in Counts I, II, and VI of the indictment Chapman was charged with similar conduct, namely, "forging cashier's checks, adding his own name and account numbers over the initially

executed payable to line of 'Internal Revenue Service' and then cashing the checks and pocketing the money." The district court concluded that the evidence was admissible because it was "highly relevant and probative on elements of the crime, particularly the issue of intent." The court further found that the evidence was "close in time to the matters at issue here, and there can be no question these are the acts of the defendant on trial." To reduce the risk of prejudice, the court used the following jury instruction:

> You have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence on the question of intent, plan, knowledge, identity or absence of mistake. You should consider this evidence only for this limited purpose.

After the jury found Chapman guilty as charged, he was given concurrent sentences of 60 months on each count.

## II

On appeal, Chapman first argues that the government lacked sufficient evidence to support his conviction. We review the sufficiency of evidence for Chapman's conviction under the familiar deferential standard: We may reverse the conviction only if no rational trier of fact, viewing the evidence in the light most favorable to the government, could have found his guilt beyond a reasonable doubt. *United States v. Gorman*, 613 F.3d 711, 715 (7th Cir. 2010).

## A

The government had the burden at trial to prove beyond a reasonable doubt that Chapman "ma[de], utter[ed] or possesse[d] a forged security of . . . an organization, with intent to deceive another person, organization, or government." 18 U.S.C. § 513(a). Chapman argues that the government failed to prove his lack of good faith or his intent to deceive. As he sees it, his good faith cannot be doubted because he substituted his name for that of the IRS on the "pay to the order" line on three cashier's checks and he issued the checks from NAHS's Fifth Third Bank accounts to himself using his limited power of attorney. With a certain amount of chutzpah, he argues that his conduct must have been in good faith because it was otherwise so obviously illegal.

Chapman's arguments are unconvincing. Not surprisingly, there is no support for the idea that blatant illegality is actually evidence of pristine intent. With respect to the cashier's checks, Chapman instructed Mr. Gray to purchase seven such checks made payable to the IRS for more than $109,000 in total. He submitted a letter to the Grays informing them that this had been done. But Chapman did not submit all seven checks to the IRS; instead, he kept three of the checks for himself and cashed them after he had been fired from NAHS. He did not notify the Grays that he had kept the checks or that he had cashed them for himself. This conduct is overwhelming evidence of intent to deceive.

Turning to the checks written on the Fifth Third Bank accounts, we have no trouble concluding that the jury

was entitled to reject Chapman's argument that he had the power to write those checks. First, his power of attorney was limited to opening accounts. Mrs. Gray had revoked even that limited authorization by the time he wrote these checks. Chapman attempted to reinstate it using her signature stamp, but he did so without informing her or securing her authorization. Using his illicit authority, Chapman wrote checks to himself using Mrs. Gray's signature stamp. The jury certainly could infer that he would not have bothered to use her stamp if he already possessed authority to draw on the account.

B

Chapman next argues that the government failed to prove at trial that International Research Foundation (NAHS's former payroll arm) and Lake Forest Trust (the NAHS-affiliated trust) conducted business outside Illinois or otherwise affected interstate commerce. The government was required to prove that the two victim entities were each "a legal entity . . . which operates in or the activities of which affect interstate or foreign commerce." 18 U.S.C. § 513(c)(4); see also *United States v. Lee*, 439 F.3d 381, 387 (7th Cir. 2006) (reversing conviction on two forgery counts where the government did not present any evidence that the bank named on the check existed).

This argument is also easily dismissed. The testimony at trial established that International Research Foundation and Lake Forest Trust were engaged in the business of their parent NAHS, and that the parent enterprise

sold products throughout the United States. Ted Camp-desuner, NAHS's director of client services, and the Grays testified that the two entities are NAHS's sub-sidiaries: International Research Foundation was re-sponsible for payroll and Lake Forest Trust managed the business's property and now manages its research facility. While further testimony on this issue might conceivably have solidified the matter, it cannot be said from the testimony that the entities lacked "at least, a *de minimis* effect on interstate commerce." *Id*.

## III

Chapman next contends that the district court improp-erly admitted evidence of his 2004 forgery conviction. He claims it was not used for anything other than pro-pensity and therefore should have been excluded under Rule 404(b). As he puts it, all the government wanted to do was to suggest to the jury "once a forger, always a forger." We review the district court's ruling for abuse of discretion. *United States v. Reese*, 666 F.3d 1007, 1015 (7th Cir. 2012). The district court's ruling will be reversed "[o]nly where no reasonable person could take the view adopted by the trial court." *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008).

The rule forbids the use of earlier bad acts to prove propensity (which it labels a "prohibited use"), but it permits the use of such evidence for a variety of other purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2); see *United States v.*

*Conner*, 583 F.3d 1011, 1021-22 (7th Cir. 2009). The admission of this type of evidence always carries with it some risk of unfair prejudice to the defendant, but the critical issue is whether that risk is sufficiently outweighed by other factors. *United States v. Green*, 258 F.3d 683, 694 (7th Cir. 2001). We look at four points in deciding whether evidence was properly admitted under this rule: whether the evidence "(i) is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (ii) shows that the other act is similar enough and close enough in time to be relevant; (iii) is sufficient to support a finding that the defendant committed the other act; and (iv) has probative value not outweighed by the danger of unfair prejudice." *Id.*

Here, looking at the first element, we are satisfied that Chapman's 2004 conviction shed light on the questions of intent and lack of mistake. It shows that he knew how to manipulate financial instruments for his personal benefit, and it also undermines his argument that he thought that he was authorized to treat the NAHS accounts as his own.

As for the second point, the district court rationally could have concluded that the 2004 conviction was similar enough to charged counts to be relevant. In both cases, Chapman used his business relationship with a client to gain access to his client's funds. He tampered with proprietary information—business checks, signature stamps, and company accounts—for personal financial gain. The fact that the underlying conduct is nearly identical

to only three of the six counts (those dealing with the cashier's checks) does not render it irrelevant to the remaining counts (those focused on the Fifth Third Bank account). In addition, the conviction was close enough in time to this case to be relevant to the charges. The acts underlying the 2004 conviction and this case are separated by two years, at most.

Chapman does not seriously challenge the sufficiency of the evidence to support a finding that he committed the earlier acts. He really could not. The 2004 plea agreement was sufficient to support the conclusion that he did, in fact, forge the earlier check.

Finally, there is the question whether on balance the earlier conduct was unfairly prejudicial. This is a matter entrusted to the district court's discretion, and we see no abuse of discretion here. The court took care to instruct the jury about the proper use of this evidence, and we have no reason to think that the jury disregarded the instruction. In addition, Chapman has not challenged the content of the instruction on appeal. We therefore conclude that the district court did not abuse its discretion in admitting Chapman's 2004 conviction into evidence.

## IV

Accordingly, we AFFIRM Chapman's conviction.