In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4690

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHAUN BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 CR 939—**Robert W. Gettleman**, *Judge.*

ARGUED NOVEMBER 7, 2006—DECIDED DECEMBER 19, 2006

Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Arthur Veal ran a trucking
business, one function of which was to import large
quantities of cocaine. Shaun Brown was among Veal's
regular customers. (So a jury could conclude; we recount
the evidence in the light most favorable to the verdict.) On
November 15, 2000, one of Veal's trucks arrived in Dolton,
Illinois, carrying 25 kilograms of cocaine. Veal called
Brown, who had arranged to receive 17 kilos of this cargo.
After picking up his order, Brown rendezvoused with
Reginald Lewis, unaware that he was under surveillance.
Brown and Lewis switched cars, drove to meet Tara
Dozier, and stashed the drugs in the trunk of her car.

Dozier left first and was stopped by police; driving past, Brown and Lewis saw this and sped off. Lewis gave up the chase but Brown got away, alerting Veal by cell phone that "his girl" was in custody. Veal tried to make his own escape but was caught. At trial Veal and Gerald McDaniel, one of Veal's drivers, were the principal witnesses against Brown. Two police officers—Don Rector and Chris Garcia—testified to what they had seen and the cocaine they had seized from Dozier and Veal.

Brown was tried twice. The first jury convicted him of two counts of money laundering but could not reach a unanimous verdict on the single count of possessing 17 kilograms of cocaine with intent to distribute. The second jury convicted him of that count, and the court sentenced him to 235 months' imprisonment on the three convictions. Before each trial Brown asked the court to prevent Rector and Garcia from testifying that they had seen Brown pick up cocaine from Veal, switch to Lewis's car, stand by while Lewis put the cocaine in the trunk of Dozier's car, and escape at high speed after learning that Dozier had been stopped. That identification, Brown maintained, was unreliable because, after Veal and McDaniel identified the escapee as "Shaun Brown," the officers looked at a photograph known to be Brown's and concluded that the photo matched the person the officers had seen. That one-photo viewing, Brown insisted, produced such a substantial possibility of irreparable misidentification that exclusion is required by *Manson v. Brathwaite*, 432 U.S. 98 (1977), *Neil v. Biggers*, 409 U.S. 188 (1972), and *Stovall v. Denno*, 388 U.S. 293 (1967). But the district judge thought that the jury could evaluate any effect of the photograph; the risk was not "irreparable."

*Manson*, *Neil*, and *Stovall* dealt with identification by a stranger, such as a victim of rape or robbery, or someone who purchased drugs from a person he had not

previously met. Even under the best circumstances, the probability of erroneous identification of a stranger seen briefly is uncomfortably high. See Elizabeth F. Loftus, *Eyewitness Testimony* (1979); Daniel L. Schacter, *The Seven Sins of Memory* 88-137 (2001). The Supreme Court thought that showing the victim (or one-time buyer) a single photo of someone asserted to be the offender could elevate that risk unduly: the single photo or one-person showup implies that the police have their man and suggests that the witness give assent. Suggestibility is one of the principal ways in which memory plays tricks and leads to improper identifications. See Schacter at 112-37.

The Justices thought that a lineup of people with similar physical attributes would solve the problem. Research in the three decades since *Manson* has called that belief into question—not only because the risk of misidentification is high even when lineups are used, but also because there is a better method, the repeated sequential display. In this procedure police show the victim one photo (or suspect) at a time and call for an absolute judgment: is this, or is it not, the perpetrator? Each photo or person is compared against memory, not against someone else—for with a lineup of six, a victim may conclude that the offender must be included. The sequential display is most reliable when repeated (does the victim make the same selection twice?) and when the officer conducting the process does not know which, if any, is a suspect (for a statement such as "that's him!" following a selection, or even an unwitting visual cue, may implant a suggestion that is hard to overcome). See R.C.L. Lindsay & Gary L. Wells, *Improving Eyewitness Identification from Lineups: Simultaneous Versus Sequential Lineup Presentations*, 70 J. Applied Psychology 556 (1985); Nancy Steblay, Jennifer Dysart, Solomon Fulero & R.C.L. Lindsay, *Eyewitness Accuracy Rates in Sequential and Simultaneous Lineup Presentations: A Meta-Analytic*

*Comparison*, 25 L. & Human Behavior 459 (2001); Jacqueline McMurtrie, *The Role of Social Sciences in Preventing Wrongful Convictions*, 42 Am. Crim. L. Rev. 1271 (2005); Amy Klobuchar, Nancy K. Mehrkens Steblay & Hilary Lindell Caliguri, *Improving Eyewitness Identifications: Hennepin County's Blind Sequential Lineup Pilot Project*, 4 Cardozo Pub. L. Policy & Ethics J. 381 (2006).

Rector and Garcia did not use either a lineup or any form of sequential display. But neither did they use a process that needlessly put a name or likeness into their minds—for they were not victims trying to separate a culprit from a crowd. They were trying, instead, to determine whether they had been lied to. After being arrested, Veal told the police that the person who had picked up 17 kilograms of cocaine, made his escape, and alerted Veal to the need to make himself scarce, was Shaun Brown. Was Veal telling the truth or trying to mitigate his own punishment while diverting attention from his actual customer? The quickest way to tell was to look at a photograph of Shaun Brown before memory of the missing man's appearance faded. That's exactly what they did. They retrieved a mug shot of Brown, and when it matched their recollection of the fugitive they concluded that Veal was telling it straight. The officers approached the photo not as victims open to persuasion by officialdom, but as skeptics trying to check up on their new source.

Come the trial, the principal witnesses against Brown were Veal and McDaniel—and the principal risk was not that their memory was playing tricks, but that they were lying to try to reduce their own punishments while shielding a customer. That officers Rector and Garcia had confirmed Veal's story while their memory was fresh helped the jury determine whether Veal and McDaniel were truthful. If Veal had chosen a name at random, or fingered some small fry drug dealer who had

nothing to do with Veal's enterprise, it is very unlikely that the photo would have matched what the officers remembered about the buyer who got away. Thus the process did not create a pointless risk of misidentification; instead it helped curtail the risk of Veal's deceit. The district judge did not err in allowing the jury to consider the officers' testimony.

Brown's remaining arguments are makeweights. He contends, for example, that a new trial should be held because one of the exhibits was in the jury's possession by mistake during deliberations. True, the judge had not planned to send this exhibit—a summary of the money-laundering transactions—to the jury room; it got there by oversight. But it was in evidence, and counsel for both sides had discussed it extensively during closing argument as well as earlier phases of the trial. The oversight was not prejudicial.

Nor was it prejudicial when the judge charged the jury, in the indictment's language, that the drug crime under consideration was the possession of cocaine with intent to distribute "on or about" November 15, 2000. Brown's own lawyer requested that the jury charge track the indictment; this waives any claim of error. Not that there was an error. This is standard language, designed to avoid an argument that the defendant should be acquitted because the crime occurred a day before, or after, the alleged date. Brown knew what transaction was at issue, and although the jury heard about others none took place close to the specified date.

As Brown sees things, the jury should not have learned about any other purchases he made from Veal's organization. Evidence of other crimes may not be used to show a criminal propensity. See Fed. R. Evid. 404(b). But the prosecution did not offer other transactions on the theory, rejected by *United States v. Beasley*, 809 F.2d 1273 (7th

Cir. 1987), that one drug crime always may be used to prove another. Instead this evidence responded to Brown's claim of mistaken identity. Brown maintained that he had nothing to do with Veal, who must have picked his name out of a hat. That defense was undermined when the prosecutor supplied evidence that Brown had been purchasing cocaine from Veal for years. That evidence directly undercut Brown's defense that Veal was a liar and that officers Rector and Garcia were mistaken about their identifications. Rule 404(b) allows other-crime evidence to be used to show identity; the district court did not err in allowing this evidence to be used in Brown's trial.

Finally is the inevitable argument that the sentence is unreasonably high. The district court calculated a range of 235 to 293 months under the Sentencing Guidelines. Brown does not contend that this calculation is erroneous. The actual sentence of 235 months is at the low point of that range. It is not unreasonably high. See *United States v. Gama-Gonzalez*, No. 06-1965 (7th Cir. Dec. 5, 2006); *United States v. Bullion*, 466 F.3d 574 (7th Cir. 2006). Other large-scale drug dealers are serving much longer sentences.

AFFIRMED

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*