In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3306

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MONICO R. ALBIOLA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cr-00313-1—**Charles R. Norgle, Sr.,** *Judge.*

ARGUED JANUARY 12, 2010—DECIDED OCTOBER 8, 2010

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* A jury found Monico R. Albiola guilty of one count of attempting to possess with intent to distribute methamphetamines, in violation of 21 U.S.C. § 846, and one count of knowingly and intentionally using a communication facility in the commission of a controlled substance offense, in violation of 21 U.S.C. § 843(b). Albiola appeals his conviction, arguing that the district court erred by admitting evidence

of other mailing labels unrelated to the charged offense. Because the other mailing labels were admissible as evidence of absence of mistake under Rule 404(b), we find that any error in their admission was harmless. Although Albiola contends that the testimony of a law enforcement agent describing the methods and results of his investigation constituted impermissible hearsay, we find that the testimony did not contain any out-of-court statements. We therefore affirm Albiola's conviction.

## I.  BACKGROUND

On May 10, 2007, United States Postal Inspector Service ("USPIS") agents at O'Hare International Airport's mail center intercepted an Express Mail package addressed to "Monico Albiola, 1310 Cambia Drive, Apartment 6119, Schaumburg, Illinois." The return address was "David Albiola, 11014 3rd Street, Cashion, Arizona." After searching various law enforcement and public databases, the USPIS agents determined that the Arizona address existed but that no "David Albiola" was affiliated with it. The inspectors then obtained a search warrant and opened the package. Inside was a smaller box containing a coffee maker, and inside the coffee maker's carafe were two plastic bags containing a white powdered substance. According to analysis performed by the Drug Enforcement Administration ("DEA"), the substance, which weighed over 120 grams in total, was a mixture containing methamphetamine.

A few days later, USPIS conducted a controlled delivery of the package under government surveillance.

The package had been repacked to contain a lookalike substance and a tracking device to monitor when the package was moved or opened. USPIS Inspector Eduardo Andrade, who was dressed as a mail carrier, delivered the package to the Schaumburg address. Albiola signed for and accepted the package, but rather than re-entering his apartment immediately, Albiola lingered in the doorway and watched Andrade as he walked down the hallway. After Andrade was out of sight, Albiola took the package inside the apartment, deadbolted the front door, and locked the sliding glass door. A few minutes later, the tracking device alerted, which indicated that the package had been opened. At this point, law enforcement agents entered the apartment pursuant to a search warrant and found Albiola in the hallway outside the master bedroom. The agents discovered the package inside the master bedroom. The coffee maker had been taken out of the box, and the carafe was pulled out slightly. The top of the carafe had been removed, leaving the two plastic bags containing the white substance exposed. During a post-arrest interview, Albiola stated that the package contained "something" he had purchased in Arizona. Albiola was indicted for attempted possession with intent to distribute methamphetamines and use of a communication facility in committing a drug offense, in violation of 21 U.S.C. §§ 846 and 843(b).

During Albiola's trial, the government elicited testimony from USPIS Inspector Jeffrey Gunther, who was primarily responsible for this investigation. Gunther testified about his attempts to verify the existence of

"David Albiola," the purported sender of the subject package, which included records searches and interviews with Albiola's parents and the parents of Antoinette, Albiola's wife. Gunther testified that, based on his investigation, he was never able to identify "David Albiola" or otherwise confirm his existence. The district court admitted this testimony over Albiola's objection.

In addition to evidence that the return address on the subject package was fictitious, the government also introduced evidence that Albiola was connected to four other Express Mail labels containing fictitious addresses. Two of the labels were found during a consent search of Albiola's vehicle. Both labels were customer copies for Express Mail packages that were sent on May 3, 2007. The first label was addressed to "Monico Meress, 645 Rooster Run, Scherty, Texas." The return address was listed as "Alberto Romero, 1410 Wise Rd #3119, Schamburg, IL 60193." The second label found in Albiola's car contained the same return address, but was addressed to "Juventino Perez, 1805 S. 113th Dr., Avondale, AZ." According to Gunther, the Wise Road return address on both labels was fictitious—Wise Road exists (indeed, it runs adjacent to Cambia Drive, the street on which Albiola's apartment is located), but street number 1410 does not.

The other two mailing labels introduced by the government were electronic copies of labels found during a USPIS records search of packages sent through the Schaumburg post office. One label was dated April 27,

2007 and was sent to Albiola's apartment in Schaumburg. It contained the following return address: "Juan Albiola, 11001 W. Apache, Cashion, AZ 85329." According to Gunther, the street address was valid, but investigators determined that no person by the name of "Juan Albiola" received mail there.[1] The other label, dated March 2, 2007, indicated that the package was sent to Albiola's address in Schaumburg (although it did not list his specific apartment number) and was sent from "Alberto Romero" at 3600 Desert View Drive, Apache Junction, Arizona. During trial, Gunther noted that the road Desert View exists, but street number 3600 does not. Over Albiola's objection, the district court admitted all four labels, apparently as direct evidence of Albiola's knowing and intentional use of the United States mails. In its post-trial order, the court stated that the labels were also admissible as non-propensity evidence under Rule 404(b) of the Federal Rules of Evidence.

The jury found Albiola guilty on both counts, and the district court sentenced him to 97 months' imprisonment. Albiola now challenges his conviction and seeks a new trial. He argues that the district court's admission of the other four mailing labels was improper under Rule 404(b) and that Gunther's testimony regarding his inter-

---

[1] Like his testimony about his investigation into "David Albiola," Gunther's testimony about his investigation into the existence of "Juan Albiola" was similarly limited to a confirmation that he had interviewed Albiola's and Antoinette's parents but had not found any evidence that Juan Albiola existed.

views of Albiola's and Antoinette's parents contained inadmissible hearsay in violation of Rule 801.

## II. ANALYSIS

Albiola first contends that the district court erred by admitting the other mailing labels, which Albiola objected to in a pretrial motion in limine and during trial. We review evidentiary rulings made over a defendant's objections for abuse of discretion. *United States v. Avila*, 557 F.3d 809, 819 (7th Cir. 2009).

At the hearing on Albiola's motion in limine, the government asserted that the labels were "intricately intertwined with the investigation" since the labels "were part of the investigation that led up to the controlled delivery." Apparently unpersuaded by this argument, the district court commented that the government's "stronger argument would be that it's direct evidence of the use of the mails." The government then stated that "for [Section] 843(b) we have to show that the use of the mails was knowing. And these parcels show that the defendant knew what an Express parcel looked like." After a brief discussion, the district court said: "There does appear to be some relevance to these various exhibits in terms of [Rule] 401. There is at least a prima facie indication of their admissibility. I've also considered it in terms of Rule 403; that the probative value may be substantially outweighed by the danger of unfair prejudice or confusion of the issues. There is not enough to support an argument denying admissibility under 403." The district court reserved ruling on the

issue until later in the trial. After the government raised the issue again during trial, the court issued the following ruling: "I am going to deny the defendant's motion in limine. The labels are admissible assuming you lay a proper foundation for them." We understand this language to mean that the district court intended to admit the evidence pursuant to its initial finding that the other labels were direct evidence of Albiola's guilt of the charged offense.

### A. Labels Not Direct Evidence

We first consider whether the labels were admissible as direct evidence of Albiola's guilt. Our principal concern with this ruling is whether the labels were relevant. Federal Rule of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." At the hearing on the motion in limine, the government argued that the labels were relevant to "show that the defendant knew what an Express parcel looked like." In its briefs, the government contends that the other labels "provided relevant evidence that defendant's use of the mail on May 16, 2007 was knowing and intentional" and "showed that defendant knew that an Express Mail parcel had traveled in the United States mail."

These arguments reflect a misunderstanding of 21 U.S.C. § 843(b). Section 843(b) provides that "it shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in

causing or facilitating the commission of any act or acts constituting a felony under [21 U.S.C. §§ 801-971]." In order to violate § 843(b), a defendant must knowingly use the communication facility *in the commission of a felony*. *See United States v. Grier,* 866 F.2d 908, 928 (7th Cir. 1989) ("Under 21 U.S.C. § 843(b), the government must prove a (1) knowing or intentional (2) use of a telephone (3) to facilitate the commission of an offense.") (citation and internal quotation marks omitted). As the Ninth Circuit explains, "The knowledge element of § 843(b) requires the government to prove that the defendant knowingly or intentionally used the communication device *in order to aid or facilitate the underlying criminal violation*. What is essential is that the defendant knows that he or she is using the communication device to facilitate the drug transaction." *United States v. Mincoff,* 574 F.3d 1186, 1196 (9th Cir. 2009) (citation and internal quotation marks omitted) (emphasis added). The government's argument fails because it ignores § 843(b)'s felony requirement.

Interpreting § 843(b) to make relevant all evidence of a defendant's prior use of the communication facility as proof of his "knowledge of how to use the facility" would likely lead to absurd results in practice. For instance, a defendant accused of committing a drug felony using his computer could be subject to the admission of all evidence of his prior computer usage—e.g., instant messenger chat logs, e-mails, online bill payment receipts, and the like—because this evidence would be presumptively relevant (albeit potentially limited by other rules of evidence), despite the fact that the underlying activities may have been entirely legal.

We do not read the statute so broadly as to make every prior use of the communication facility at issue relevant; rather, to be directly relevant to a § 843(b) violation, evidence must be probative of the defendant's use of the communication facility to commit the underlying crime. Under our interpretation of the statute, the other labels are not directly relevant to the matter at issue—that is, whether Albiola knowingly used the mail to facilitate a drug crime—because the content of the boxes shipped with the other mailing labels is unknown. Without knowledge of what the other shipments contained, those labels only show that Albiola regularly uses fictitious addresses when sending Express Mail, which does not directly bear on whether he used the mails to facilitate the offense charged. Therefore, the district court's admission of the other labels as direct evidence of Albiola's "knowledge of how to use the mails" was incorrect. When a "district court's decision rested on an error of law . . . then it is clear that an abuse of discretion has occurred because it is always an abuse of discretion to base a decision on an incorrect view of law." *United States v. Seals,* 419 F.3d 600, 606 (7th Cir. 2005). But we do "not overturn erroneous evidentiary rulings if the error is harmless," *United States v. Schalk,* 515 F.3d 768, 774 (7th Cir. 2008), and because we find that the labels were admissible under Rule 404(b) as discussed below, the district court's error was harmless.

### B. Labels Admissible as Rule 404(b) Evidence

Although a defendant's conduct unrelated to the charged offense may not be admissible "to prove the

character of a person in order to show action in con-
formity therewith," Rule 404(b) provides that evidence
of other crimes, wrongs, or acts may be admissible for
other purposes, such as proof of motive, opportunity,
intent, plan, knowledge, identity, or absence of mistake
or accident. Fed. R. Evid. 404(b). Before delving into the
merits, however, we begin by noting the circumstances
surrounding the district court's ruling and the govern-
ment's varied justifications for the admission of the
other labels. At the motion in limine hearing, the gov-
ernment expressly disavowed reliance on Rule 404(b),
stating that "it's our position that 404(b) is not impli-
cated here," and instead chose to argue that the
labels were inextricably intertwined with the USPIS
investigation. There was no further discussion of the
other labels until after the presentation of evidence con-
cluded the next day. At the charge conference, the gov-
ernment's position changed and a request for a jury
instruction based on Rule 404(b) was made: "If I may
just make a record, we are proposing an instruction that
is a 404(b) instruction; that is, evidence has been—of
other conduct has been offered that's for the limited
purpose of intent, knowledge, preparation, plan by
which the government is taking the position that that's
the other labels. We do want that instruction. It is our
position that that evidence is offered for that limited
purpose. That's why we would propose the instruction."
Albiola's attorney agreed to the instruction (noting that
his agreement was not a waiver of his earlier objections
to the evidence), so the district court included the gov-

ernment's proposed instruction in the jury charges.[2] After the trial, the district court issued a post-trial order in which it stated that the evidence was properly admitted "direct evidence of Albiola's knowing and intentional use of the United States mails," and as evidence of Albiola's modus operandi, planning and preparation, and absence of mistake under Rule 404(b). Prior to the district court's issuance of its post-trial order, the only stated basis for the district court's admission of the other labels was that they were direct evidence.

So, we are faced with the unusual situation in which the district court admitted evidence under one theory of law during trial and then advanced an alternative rationale for the admission after trial. Such a post hoc justification for an earlier ruling seems particularly problematic in the context of evidence admitted under Rule 404(b) due to its great potential for prejudice. Because of our general concerns about the prejudicial nature of this type of evidence, we have emphasized that "there must be a principled exercise of discretion. The district judge must both identify the exception that applies to the evidence in question and evaluate

---

[2] The instruction stated:

> You have heard evidence of acts of defendant other than those charged in the indictment. You may consider this evidence only on the questions of defendant's intent, preparation, plan, knowledge or absence of mistake or accident. You should consider this evidence only for these limited purposes.

whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character." *United States v. Beasley,* 809 F.2d 1273, 1279 (7th Cir. 1987). Our recent precedent indicates that a court's failure to consider the implications of Rule 404(b) evidence before admitting it may be grounds for reversal. *United States v. Ciesiolka,* 614 F.3d 347, 357 (7th Cir. 2010) ("[W]e may . . . reverse if the district court failed to consider the prejudicial nature of the Rule 404(b) evidence *before* allowing it to be admitted.") (emphasis added); *but see id.* at 360 n.2 (Ripple, J., dissenting) (arguing that a district court may explain its Rule 404(b) weighing after the evidence has been admitted). We do not find that the circumstances here dictate reversal, *cf. id.* at 358 (reversing based on "the context-specific facts of this highly unusual case" which included "the jury's day-long exposure to voluminous evidence of [defendant's] prior bad acts, many of which were appalling"); nevertheless, in light of our precedent we think it would be prudent for district courts to give the basis for the admission of Rule 404(b) evidence at the time of the ruling.

The other labels were admissible under Rule 404(b) as evidence of Albiola's absence of mistake. *See United States v. Hernandez,* 84 F.3d 931, 935 (7th Cir. 2001) (finding that evidence of prior drug crime was properly admitted to show absence of mistake). In determining whether evidence was properly admitted under Rule 404(b), the court considers whether: (1) the evidence is directed toward establishing a matter in issue other

than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, as required by Rule 403. *United States v. Harris,* 587 F.3d 861, 864-65 (7th Cir. 2009).

The other mailing labels in this case supported the inference that the fictitious address on the subject package was not accidental, and was instead an intentional act of concealment that Albiola had used repeatedly in the recent past. Further, Albiola was charged with attempt to possess drugs with intent to distribute, which required the government to prove that he acted with the specific intent to commit the underlying offense. *United States v. Magana,* 118 F.3d 1173, 1198 (7th Cir. 1997). "[W]hen a defendant is charged with a specific intent crime, the government may present other acts evidence to prove intent." *United States v. Perkins,* 548 F.3d 510, 514 (7th Cir. 2008). As we found in *United States v. Brown,* 250 F.3d 580, 585 (7th Cir. 2001), "intent is a material issue in this case, and subject to some restrictions not relevant here, the prosecution is entitled to establish it by using admissible evidence of their choosing."

With respect to the second and third factors of the four-part test, we believe that the other labels were similar to the label on the subject package and that there was sufficient evidence to support a jury finding that the

defendant committed the similar act. The four other labels were all sent between March and May 2007, and were therefore close in time to the May 9, 2007 shipment of the subject package. *See Harris,* 587 F.3d at 865 (finding that conduct occurring within two years of defendant's arrest was sufficiently close in time for Rule 404(b) purposes). The type of false information on the other labels was also consistent with the fictitious address on the subject package label. For example, the label on the subject package contained a legitimate return address, but USPIS determined that the purported sender, "David Albiola," did not receive mail there, nor could USPIS otherwise confirm his existence. Likewise, the April 2007 labels found in the records search of the Schaumburg post office contained a valid address in Cashion, Arizona, but the existence of the sender ("Juan Albiola") could not be confirmed. The two customer copy labels found in Albiola's vehicle also contained similar false information. The identity of the alleged sender, "Alberto Romero" (who was also the sender on the March 2007 label) could not be verified, and the return address was fictitious. Wise Road exists—and notably runs parallel to the street on which Albiola's apartment complex is located—but there is no "1410" building. The jury could have inferred, based on the other labels' temporal and spatial proximity to the subject package, that Albiola's receipt of the subject package was not by accident or mistake. The other labels bear on Albiola's lack of mistake because they tend to show that he "was not some hapless fool mistakenly caught up in an overzealous law enforcement action." *Hernandez,* 84 F.3d

at 935 (citing *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994)).

The fourth factor requires that the probative value of the evidence be substantially outweighed by the danger of unfair prejudice. This factor is akin to Federal Rule of Evidence 403, and we have stated that evidence is unfairly prejudicial in the context of Rule 403 if it will "induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003). We find that the court's limiting instruction was sufficient to mitigate any prejudice resulting from the admission of the labels. *See United States v. Johnson*, 584 F.3d 731, 737 (7th Cir. 2001) (finding that prejudice from admission of evidence of defendants' prior acts was cured by the limiting instruction provided to the jury, which instructed them to consider the evidence only as to intent, knowledge or absence of mistake). Without substantial evidence to the contrary, we assume that the jurors followed the court's instruction. *United States v. Williams*, 216 F.3d 611, 615 (7th Cir. 2000). As such, the other labels satisfy the four-part test required for the admission of evidence under Rule 404(b), and Albiola is not entitled to a new trial based on the labels' admission.[3]

---

[3] Although we find that the labels were properly admitted as evidence of absence of mistake, we reject the government's assertion that the prior mailings also "demonstrated defendant's

(continued...)

### C.  Testimony Not Hearsay

Albiola's final argument is that the district court im-
properly allowed USPIS Inspector Gunther to testify
about his interviews of Albiola's and Antoinette's
parents in which he inquired about the existence of
"David Albiola" and "Juan Albiola." Rule 802 prohibits
the admission of hearsay statements, which are defined
as out-of-court statements offered into evidence to
prove the truth of the matter asserted. Fed. R. Evid. 801(c).
According to Albiola, Gunther's testimony about these
interviews constitutes hearsay because the interviews
do not fall under any exception of the hearsay rule and
the government could have called the parents to testify.

---

(...continued)

modus operandi, *i.e.*, the manner in which defendant had
received drug shipments in the past and made payments for
illegal drugs." To begin with, this argument fails for the same
reason that the labels were not admissible as direct evidence.
Because the contents of the other shipments are unknown, these
other labels do not show that any parcel contained drugs or
other contraband. Moreover, the use of fictitious information
on mailing addresses is not sufficiently unique to constitute
evidence of modus operandi. *See United States v. Simpson*, 479
F.3d 492, 498 (7th Cir. 2007) ("We only allow evidence to be
admitted under the modus operandi theory when . . . the sim-
ilarities between the two crimes [are] sufficiently idiosyncratic
to permit an inference of pattern for purposes of proof. . . . But
we have cautioned that if defined broadly enough, modus
operandi evidence can easily become nothing more than the
character evidence that Rule 404(b) prohibits.") (citations
and internal quotation marks omitted).

During his testimony, Gunther testified as follows about his investigation concerning David Albiola:

Q: Were you able to determine whether David Albiola receives mail at the [Cashion, Arizona] address?

A: I was.

Q: What did you find out?

A: David Albiola does not receive mail at that address and he is not associated with that address.

Q: Did you attempt to identify David Albiola?

A: Yes, I did.

Q: How?

A: Through Internet database person search, running the name through our law enforcement computer database, using our postal inspection services databases, Accurant, and calling the post office in Cashion, Arizona.

Q: Were interviews conducted?

A: Yes, they were.

Q: Who was interviewed?

Q: Did you interview anyone?

A: The resident at that address . . . was interviewed by Arizona inspectors.

Q: Did you interview anyone?

A: Yes, I did.

Q:  Who?

A:  Monico Albiola's parents and [Antoinette's] parents.

Q:  Were you able to identify David Albiola?

A:  No, I was not.

 . . . .

Q:  Did you find any evidence that David Albiola exists?

A:  No.

This does not contain any out-of-court statement, so the prohibition against hearsay is not implicated here. Gunther never testified about the substance of his interviews of Albiola's and Antoinette's parents. He only said that he had conducted the interviews as part of his investigation, and then, in reporting the findings of his investigation, said that he had not found any evidence to substantiate the existence of David or Juan Albiola. Gunther's testimony about the results of his investigation were within his personal knowledge and are not subject to the hearsay rule. *See United States v. Blandina*, 895 F.2d 293, 301 (7th Cir. 1989) ("The results of [the agent's] investigation . . . were within his personal knowledge, which is independent of the truth of the [declarants'] statements . . . ."). The district court did not abuse its discretion by allowing the testimony.

### III.  CONCLUSION

The defendant's conviction is AFFIRMED.