MILLER, District Judge.
A jury found Nicolas Gomez guilty of four drug-related crimes following a five-day jury trial. Mr. Gomez was sentenced to four concurrent 84-month terms. Mr. Gomez contends that the district court erred in admitting evidence of his possession of cocaine a few weeks after the charged crimes, and that the district judge didn’t specify his perjurious statements when increasing his sentencing range for obstruction of justice. We affirm the conviction and sentence. While the admission of the uncharged cocaine possession was questionable, it was not an abuse of discretion. We also hold that given the context of the statements, the district court made a sufficient record.
I
This investigation was based largely upon interception of telephone communications between Roberto Romero and a male referred to as “Güero.” The government believes Güero was Mr. Gomez. Two dates are important for today’s discussion; additional facts are set forth as needed. On September 3, 2010, two agents stopped and spoke with Mr. Gomez immediately after seeing Mr. Gomez speaking with Roberto Romero. Mr. Romero was thought to be Mr. Gomez’s supplier and would become Mr. Gomez’s co-defendant. Later in the day, agents searched a car and found a quarter kilogram of cocaine. The car Mr. Romero had driven from Chicago to Milwaukee was eventually searched by agents.
Twenty-six days later, agents arrested Mr. Gomez at his home and searched the residence pursuant to a search warrant. The agents found a personal use quantity of cocaine in the pocket of a pair of pants found in a bedroom connected with Mr. Gomez. The district court denied Mr. Gomez’s pretrial motion to suppress evidence of the search and its fruits. The admission of that cocaine into evidence at trial gives rise to the first issue presented in this appeal.
The government moved for a pretrial determination of the admissibility of the September 29 cocaine evidence. The government conceded that the admissibility of the cocaine depended on what Mr. Gomez *1149 argued at trial, but the evidence would be admissible if Mr. Gomez argued that he lacked knowledge, he wasn’t the person involved in the conspiracy, or that this was all just an accident or mistake. Mr. Gomez argued that the evidence at issue wouldn’t be relevant under any circumstances because he was charged with conspiracy rather than possession, and the September 29 events happened after the charged conspiracy. The court denied the government’s request, explaining that while the sequence of events didn’t defeat admissibility, additional information was needed to connect Mr. Gomez to the cocaine found on the day of the arrest.
The government renewed its motion to admit the cocaine evidence under Rule 404(b) at trial. The government argued that Mr. Gomez had “opened the door through [his] opening statement and cross-examinations of two witnesses regarding [his] not possessing or touching cocaine, implying that [he] was just an innocent bystander at the wrong place at the wrong time.” Gov’t Br., at 14. In support of its position, the government noted that: Mr. Gomez’s counsel had established, through the agent who conducted a patdown of Mr. Gomez on the street some weeks prior to his arrest, that the agent hadn’t found cocaine, cocaine paraphernalia, or large amounts of cash on Mr. Gomez; Mr. Gomez’s counsel had established, through cross-examination of an agent who conducted surveillance of Mr. Gomez, that the agent saw no hand-to-hand transactions or Mr. Gomez with cocaine; and that Mr. Gomez’s counsel told the jury in opening statement that it wouldn’t see any evidence about Mr. Gomez having cocaine on him during the period of the charged conspiracy. The government told the court it wanted to respond to the implication that Mr. Gomez was “basically the unluckiest man in the world,” in the wrong place at the wrong time. Mr. Gomez objected to the government’s renewed request, arguing that no door had been opened and nothing had happened since the pretrial denial of the government’s request to make the evidence admissible.
The court ruled that while Mr. Gomez might have opened the door to evidence correcting a misimpression, too little evidence connected Mr. Gomez to the cocaine found on the day of the arrest:
The implication of [defense counsel’s] questioning was not simply, [Mr. Gomez] does not have drugs on him now. The implication of [defense counsel’s] questioning was, [Mr. Gomez] is not at all associated with drugs. And I think that inference is what [defense counsel] wanted to get to the jury. [Mr. Gomez] is an individual who is pure as the new fallen snow. And they are putting all of the things on him, for whatever reason, I don’t know. But that was the implication.
And the court is not ruling that they can do that because the court has not heard the evidence as to what they would expect to be able to — -how they are going to establish that when [Mr. Gomez] was in the room, whether or not they were his pants, etc. etc. etc.
So we will do that outside the presence of the jury. But I am just saying that there have been questions that you have asked, which were proper questions. But they open the opportunity, maybe, for some response to [those] issues.
Tr. at 379.
Several witnesses later, the government renewed its request to admit the Rule 404(b) evidence, arguing that it had established that the address where the cocaine was found on the day of the arrest was Mr. Gomez’s residence and the bedroom at issue was Mr. Gomez’s bedroom. Mr. Go *1150 mez again objected, first, because the evidence was insufficient to support a finding that he committed a similar act; second, because numerous people lived in that house so the bedroom could have belonged to anyone; and, third, because the bedroom contained “quite a bit of clutter,” it wasn’t clear where the jeans were found or if he owned them. In reply, the government specified that the later cocaine evidence was offered on the issues of identity and absence of mistake, rather than as propensity evidence. Mr. Gomez’s counsel rejoined that it was propensity evidence and that there was too little evidence to support a finding that Mr. Gomez committed the subsequent act.
This time, the court agreed with the government and admitted the evidence on the issues of identity, knowledge, and absence of mistake or accident. The jury heard the evidence and was told in the final instructions that it could only consider the September 29 evidence “on the question of identity, absence of mistake or accident, and knowledge.”
A
Mr. Gomez claims the admission of evidence of his subsequent possession of a user amount of cocaine as Rule 404(b) evidence was an abuse of discretion as the admission of that evidence fails each prong of the Rule 404(b) test.
“We review a district court’s admission of evidence for an abuse of discretion [and] will reverse an evidentiary ruling only when the record contains no evidence on which the district court rationally could have based its ruling.” United States v. Gorman, 613 F.3d 711, 717 (7th Cir.2010). “We give special deference to the trial judge regarding these matters because of his first-hand exposure to witnesses, familiarity with the case, and ability to gauge the impact of the evidence in the context of the entire proceeding. Only where no reasonable person could take the view adopted by the trial court will we reverse an evidentiary ruling.” United States v. Vargas, 552 F.3d 550, 554 (7th Cir.2008) (citation omitted); accord United States v. Santiago, 643 F.3d 1007, 1011 (7th Cir.2011).
When Mr. Gomez was tried in September 2011, Federal Rule of Evidence 404(b) provided that “[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” For the evidence to be admissible, the non-propensity probative value of the evidence must be sufficient so as not to be substantially outweighed by the risk that the jury will use the evidence as proof of an improper character inference. Fed. R.Evid. 403; United States v. Ciesiolka, 614 F.3d 347, 355-56 (7th Cir.2010).
A court deciding whether to admit evidence under Rule 404(b) considers whether “(1) the evidence is directed toward establishing a matter in issue other than the defendant’s propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4)the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, as required by Rule 403.” United States v. Albiola, 624 F.3d 431, 439 (7th Cir.2010); accord United States v. Boling, 648 F.3d 474, 479 (7th Cir.2011).
*1151 Mr. Gomez contends that none of these factors supported admission of the September 29 evidence.
B
The first consideration is whether the evidence was directed toward establishing a matter in issue other than the defendant’s propensity to commit the crime charged. Mr. Gomez points to the district court’s infelicitous comment when discussing the government’s first in-trial offer of the September 29 evidence:
The implication of [defense counsel’s] questioning was not simply, [Mr. Gomez] does not have drugs on him now. The implication of [defense counsel’s] questioning was, [Mr. Gomez] is not at all associated with drugs. And I think that inference is what [defense counsel] wanted to get to the jury. [Mr. Gomez] is an individual who is pure as the new fallen snow. And they are putting all of the things on him, for whatever reason, I don’t know. But that was the implication.
Tr. at 379 (emphasis added). At that point in the proceedings, the government sought admission on the theory that by focusing on the lack of eyewitness testimony that Mr. Gomez had possessed cocaine during the time of this conspiracy, the defense had opened the door to evidence that he possessed cocaine shortly after the conspiracy’s expiration.
Had the district court admitted the evidence at that point, it would have been error. The principle of “door opening” “depends on the specific situation in which it is used and thus calls for an exercise of judicial discretion.” United States v. Villegas, 655 F.3d 662, 672 (7th Cir.2011). A defendant’s opening statement might increase the probative value of proof of other acts, see, e.g., United States v. Dennis, 497 F.3d 765, 768 (7th Cir.2007), but the Rule 404(b) evidence must respond to what is said to trigger admissibility. Villegas, 655 F.3d at 672. Nothing about Mr. Gomez’s defense had opened the door to his possession of cocaine in a time outside the conspiracy, any more than challenging evidence that a defendant robbed a bank on one day opens the door to evidence that he had robbed a bank on another day.
But the evidence wasn’t admitted at that point in the trial. The court refused to admit it because too little evidence tied the post-conspiracy cocaine to Mr. Gomez. By the time the government offered the September 29 evidence again, the government specified that it was offering the evidence to prove identity, knowledge, and absence of mistake. The government said nothing about rebutting the opening statement or Mr. Gomez’s cross-examination of two agents — nothing about Mr. Gomez having opened the door. The trial court admitted the evidence and eventually told the jury the evidence was admitted on the issues of identity, knowledge, and absence of mistake.
Whatever theory of admissibility might have been discussed earlier in the trial, the September 29 evidence ultimately was admitted for the non-propensity purposes of identity, knowledge, and absence of mistake. The government satisfied the first prong of the test for admissibility.
C
The second prong of the test for admissibility is whether the evidence is similar enough and close enough in time to be relevant to the non-propensity matter in issue on which it is offered — in other words, whether it is probative of identity or absence of mistake. Mr. Gomez argues that the September 29 evidence was not relevant to either point.
*1152 1
Mr. Gomez is correct with respect to absence of mistake. Rule 404(b), at the time of trial and now, specifies absence of mistake as an illustrative example of the nonpropensity purposes for which evidence of a defendant’s act on another occasion is permissible. Evidence offered for that purpose almost invariably goes to whether the defendant was mistaken, not to whether investigators were mistaken. See, e.g., United States v. Albiola, 624 F.3d 431, 439 (7th Cir.2010); United States v. Whitlow, 381 F.3d 679, 686 (7th Cir.2004). One trial’s facts invariably differ from the one before, so it would be wrong to say uncharged misconduct evidence never could be admissible to prove an absence of mistake on the investigators’ behalf. But Mr. Gomez’s case shows why such a case would be an outlier.
Mr. Gomez’s primaiy defense at trial was that the investigators were mistaken as to whose voice they recorded conspiring with Roberto Romero. Mr. Gomez pointed out that others (such as Victor Reyes) lived in the residence from which calls were made and received, and, as already noted, Mr. Gomez pointed out the lack of any eyewitness testimony to his participation. The investigators, he implied, were mistaken. The government’s September 29 evidence rebutted that implication only by showing precisely what Rule 404(b) forbids: that Mr. Gomez has a propensity toward involvement with cocaine, making it less probable that the investigators were mistaken. See United States v. Webb, 548 F.3d 547, 548 (7th Cir.2008) (“As for ‘absence of mistake’: how does a conviction show this except via the prohibited inference that someone who distributes drugs once is likely to do it again?”) (emphasis in original). Absence of mistake was not, under the circumstances of this case, a non-propensity purpose for the September 29 evidence.
2
Nor can we perceive a series of non-propensity inferences that would make Mr. Gomez’s later possession of cocaine relevant to his knowledge during the conspiracy. The government did little more, at trial and before this court, than mention “knowledge” as one purpose for which the September 29 evidence was offered. Mere passing reference isn’t enough. “To differentiate between ‘the illegitimate use of a prior conviction to show propensity and the proper use of a prior conviction to prove intent,’ ‘the government must affirmatively show why a particular prior conviction tends to show the more forward-looking fact of purpose, design, or volition to commit the new crime.’ ” United States v. Miller, 673 F.3d 688, 699 (7th Cir.2012) (quoting United States v. Jones, 389 F.3d 753, 757-58 (7th Cir.2004)).
3
Mr. Gomez contends the government’s showing was insufficient to prove identity. He argues that uncharged acts can prove identity only through a showing of the defendant’s distinctive manner of operation, or modus operandi. United States v. Simpson, 479 F.3d 492, 498 (7th Cir.2007). He also argues that his possession of cocaine twenty-six days after the discovery of the cocaine in Mr. Romero’s car is too remote to be proof of anything.
Mr. Gomez overstates the relationship of modus operandi and other methods of proving a criminal actor’s identity. Modus operandi — a criminal’s particular way of committing a crime — is a common way of proving a perpetrator’s identity; it requires no inference of character or propensity to say that because this person commits crimes in the same peculiar way the *1153 charged crime was committed, proof of another act to show the person’s peculiar approach doesn’t enlist any inference about the person’s propensity to commit the crime in the first place. See, e.g., United States v. Anifowoshe, 307 F.3d 643, 647 (7th Cir.2002). But modus operandi isn’t the only way evidence of conduct on another occasion can be relevant to identity without relying on an inference of character or propensity. See United States v. Simpson, 479 F.3d 492, 497-98 (7th Cir.2007) (explaining difference between mo-dus operandi and other methods of proving identity through uncharged conduct).
Mr. Gomez argues that September 29 was too remote from the conspiracy’s time frame to be relevant. Mr. Gomez describes the separation as “weeks,” while the government points to United States v. Dennis, 497 F.3d 765, 768-69 (7th Cir.2007), in which events that occurred six months before the charged crime were considered close enough in time to be relevant. Simply defining the time period or citing cases that involved greater time periods does not reach the heart of the remoteness aspect of the relevancy prong. A court considering admission of evidence governed by Rule 404(b) must ask whether, under the specific facts of the case and the string of inferences on which the proponent of the evidence relies, the uncharged conduct is close enough in time to be relevant. See, e.g., United States v. Chapman, 692 F.3d 822, 827 (7th Cir.2012); United States v. Sebolt, 460 F.3d 910, 917 (7th Cir.2006); United States v. Chavis, 429 F.3d 662, 669-70 (7th Cir.2005). Under the facts of this case, if Mr. Gomez’s later possession of cocaine is relevant to the identity of the person on the recorded calls, twenty-six days is not so remote as to reduce that relevancy.
A defendant’s prior or subsequent possession of cocaine isn’t always admissible when identity is at issue in a drug case. United States v. Brown, 471 F.3d 802, 806 (7th Cir.2006). To satisfy this prong of the Rule 404(b) test, the uncharged act evidence must make it more probable that the defendant was the actor in the charged crime. More specifically, Mr. Gomez’s possession of cocaine on September 29 must make it more probable that Mr. Gomez was the person involved in the drug conspiracy (and captured on the monitored phone calls) with Mr. Romero.
That anyone in Milwaukee possessed cocaine on September 29, 2010 tells a juror nothing about whether Nicolas Gomez was involved in a large cocaine distribution operation with Roberto Romero earlier in 2010. That it was Nicolas Gomez who possessed the cocaine on September 29 adds nothing to its probative value, unless the juror reasons that the September 29 possession shows that Mr. Gomez has a propensity toward involvement with cocaine — but that is the inference Rule 404(b) forbids. Agents questioned Mr. Gomez near the time and place Mr. Romero’s abandoned car was found with a quarter kilogram of cocaine, but six other people were nearby at the same time, and this all occurred near Mr. Gomez’s residence.
The government notes, though, that the cocaine was found in Mr. Gomez’s room in a house associated with one of the phones involved in the sixty-one recorded phone calls in which someone arranged cocaine deliveries with Mr. Romero. And the cocaine was found in Mr. Gomez’s room in that house less than four weeks after the aborted delivery by Mr. Romero. These additional facts, the government argues, make it more probable that Mr. Gomez was the person whose voice was on those recorded calls. In support of its argument, the government cites United States v. Brown, 471 F.3d 802, 806 (7th Cir.2006), in which the defendant claimed he had *1154 never had any dealings with a confederate named Veal, “who must have picked [Brown’s] name out of a hat.” Under those circumstances, the government’s evidence that Brown had been dealing with Veal for years was relevant to prove Brown’s identity as the person with whom Veal dealt. See also United States v. Gibson, 170 F.3d 673, 679 (7th Cir.1999) (“This evidence helped establish that Agent Banks dealt with Gibson, not his brother, in the charged 1996 drug transactions even though Gibson did not confess to the specific undercover sales in this case.”).
The inference on which the government relies in this case is less compelling than that in Brown; the later possession of cocaine discloses no relationship between Mr. Gomez and Mr. Romero. Still, evidence is relevant if it has any tendency to a make a fact of consequence in determining the action more or less probable than it would be without the evidence, Fed. R.Evid. 401, and the September 29 evidence has some tendency to make it more probable that Mr. Gomez, a person living in a house associated with one of the phones on which drug deliveries were arranged, was the person recorded in conversation with Mr. Romero. See United States v. Boros, 668 F.3d 901, 907 (7th Cir.2012) (“A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a ‘low threshold’ for establishing that evidence is relevant. We have recently asserted that ‘[t]he Federal Rules of Evidence do not limit the government to the ‘most’ probative evidence; all relevant evidence is admissible and the Rules define relevance broadly.’ ”) (quoting United States v. McKibbins, 656 F.3d 707, 711 (7th Cir.2011)). Assessing the extent of that tendency is a matter for the fourth prong of the analysis. See United States v. Beck, 625 F.3d 410, 417 (7th Cir.2010) (“While evidence of Beck’s probation could be admitted to establish his identity, under Rule 404(b), the judge still has to weigh its appropriateness under Rule 403.”).
D
Admissibility under Rule 404(b) requires enough evidence to support a jury finding that the defendant committed the other act. United States v. Albiola, 624 F.3d at 439. Mr. Gomez complains that the evidence of his occupancy of the bedroom was ambiguous. Documents found in the bedroom identified Victor Reyes; Mr. Reyes had identification showing he lived in the house; and Mr. Reyes had associated the house with phones in his name. Further, Mr. Gomez notes, the agents’ testimony disagreed as to whether the cocaine was found in a jacket or a pair of jeans, and the chemist’s analysis of the substance was (as Mr. Gomez saw it) less than convincing.
Mr. Gomez demands greater certainty than does Rule 404(b). Proof that would allow a factfinder to connect the uncharged act with the defendant is no small burden, but the Rule requires no more than that. See United States v. Burke, 425 F.3d 400, 410 (7th Cir.2005). The district court declined to admit the September 29 evidence until the government laid this foundation. Ultimately, the evidence showed that Mr. Gomez came out of the room at 6:00 a.m. when the agents executed the warrant, and several documents addressed to Mr. Gomez were found there. From that, a reasonable juror could infer that the bedroom contained Mr. Gomez’s belongings. The additional facts to which Mr. Gomez points would allow a different finding, but don’t foreclose a finding that Mr. Gomez was the person who possessed the cocaine on September 29.
The government satisfied the third prong of the four-part test.
*1155 E
Finally, admission is improper if the risk of unfair prejudice from admission of the uncharged act evidence substantially outweighs its probative non-propensity value. The most common risk of unfair prejudice is that the jury will draw the forbidden propensity inference — that the defendant is the sort of person who does what he’s charged with — and Mr. Gomez identifies no other risk. Admission of the September 29 evidence was improper, then, if the risk that the jury would draw the forbidden propensity inference substantially outweighed the probative value of the evidence as proof of the identity of the person who discussed cocaine deliveries on phones associated with the house in which the cocaine was found on September 29.
As already noted, the string of inferences on which the government relies to get from Mr. Gomez’s possession of cocaine on September 29 to Mr. Gomez’s involvement in this cocaine conspiracy is not particularly compelling. Balancing the risk of unfair prejudice against probative value is done on a sliding scale: the lower the probative value, the lower the tolerance of the risk of prejudice. United States v. Earls, 704 F.3d 466, 471 (7th Cir.2012). Other judges, including members of this panel, might well have decided that the risk that the evidence would be used as proof of propensity substantially outweighed the probative value in that string of inferences. Today’s issue, though, isn’t admissibility; it is whether the district court abused its discretion in admitting the evidence. United States v. Lewis, 641 F.3d 773, 783 (7th Cir.2011) (“although we might have ruled differently, the district judge did not abuse her discretion”); accord United States v. Ozuna, 674 F.3d 677, 681 (7th Cir.2012) (“The district court’s decision to admit evidence is reviewed for abuse of discretion, given the judge’s position to assess the impact of the evidence in the context of the trial witnesses and evidence as a whole.”). The district court did not abuse its discretion.
First, the district court instructed the jury on the limited use to which the September 29 evidence could be put. We assume juries ordinarily follow limiting instructions, United States v. Sanchez, 615 F.3d 836, 842 (7th Cir.2010), so that instruction reduces the risk that the jury would consider the September 29 evidence as proof of Mr. Gomez’s propensity to be involved with drugs. Cf. United States v. Simpson, 479 F.3d 492, 500 (7th Cir.2007) (“[T]he jurors did not receive a relevant limiting instruction, which can minimize prejudice from the introduction of Rule 404(b) evidence.”).
Second, a district judge abuses her discretion only if no reasonable judge would agree with the ruling. Smith v. Hunt, 707 F.3d 803, 807-08 (7th Cir.2013); United States v. Chapman, 692 F.3d 822, 827 (7th Cir.2012); United States v. Reese, 666 F.3d 1007, 1015 (7th Cir.2012). Those who challenge the district judge’s evidentiary rulings “are like rich men who wish to enter the Kingdom: their prospects compare with those of camels who wish to pass through the eye of the needle.” United States v. Walton, 217 F.3d 443, 449 (7th Cir.2000) (quoting Agushi v. Duerr, 196 F.3d 754, 759 (7th Cir.1999)). And we have often said that we give Rule 403 balancing decisions even wider berth. United States v. Miller, 688 F.3d 322, 327 (7th Cir.2012) (“we give ‘special deference’ to the court’s findings under Rule 403”); United States v. Hosseini, 679 F.3d 544, 556 (7th Cir.2012) (“We give special deference to the district court’s assessment of the balance between probative value and prejudice because that court is in the best position to make such assessments.”) (quoting United States v. Hale, 448 F.3d *1156 971, 985 (7th Cir.2006)); Common v. City of Chicago, 661 F.3d 940, 946 (7th Cir.2011) (same).
We cannot say that admission of the September 29 evidence was an abuse of discretion under these standards. The government articulated a reasonable, if a bit wobbly, theory of relevance to a non-propensity matter central to the prosecution and defense. The government presented enough evidence that a factfinder could decide the cocaine found on September 29 belonged to Mr. Gomez. Evidence that would support an additional inference that Mr. Gomez was a conspirator was especially important in light of Mr. Gomez’s theory of defense. The district court listened to eloquent argument from Mr. Gomez’s counsel concerning the risk of unfair prejudice, but ultimately disagreed, admitted the evidence, and gave a limiting instruction to reduce that risk.
F
Today’s decision is no retreat from what we said last year in United States v. Miller, 673 F.3d 688 (7th Cir.2012):
To differentiate between ‘the illegitimate use of a prior conviction to show propensity and the proper use of a prior conviction to prove intent,’ ‘the government must affirmatively show why a particular prior conviction tends to show the more forward-looking fact of purpose, design, or volition to commit the new crime.’ ... Confusion and misuse of Rule 404(b) can be avoided by asking the prosecutor exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove.
673 F.3d at 699 (quoting United States v. Jones, 389 F.3d 753, 757-58 (7th Cir.2004)). The same reasoning applies regardless of whether the uncharged conduct resulted in a conviction, regardless of whether it was the uncharged act or the charged act that happened first, and regardless of the stated non-propensity purpose.
Nor do we retreat at all from what we said in United States v. Albiola, 624 F.3d 431, 438 (7th Cir.2010):
Because of our general concerns about the prejudicial nature of this type of evidence, we have emphasized that ‘there must be a principled exercise of discretion. The district judge must both identify the exception that applies to the evidence in question and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant’s character.’ United States v. Beasley, 809 F.2d 1273, 1279 (7th Cir.1987). Our recent precedent indicates that a court’s failure to consider the implications of Rule 404(b) evidence before admitting it may be grounds for reversal.
Analyses such as those set forth in Miller and Albiola improve the quality of rulings in the district courts and facilitate review in this court. It is what district courts should do; had the district court done so with respect to the September 29 evidence, our analysis could have been briefer.
Still, this ease is not Miller, in which the district court didn’t conduct the Rule 403 balancing test at all and found probative value in the “pattern” established by a drug crime that the defendant committed eight years earlier. Mr. Gomez’s uncharged conduct involved the same drug, the same house, and the same calendar month. A reasonable judge could find that the risk of a propensity inference didn’t *1157 substantially outweigh the non-propensity probative value.
Nor is this case Albiola. Mr. Gomez does not claim the district judge ignored the implications of the September 29 evidence; he simply contends the judge got it wrong. “Although the district court might have better explained the rationale behind its Rule 403 conclusion, it is evident to us that the court’s ultimate reason for admitting the evidence was that the probative value was not significantly outweighed by the prejudicial impact.” United States v. Gorman, 613 F.3d 711, 720 (7th Cir.2010).
II
Mr. Gomez argues that the district court erred in calculating the range recommended by the sentencing guidelines. The district judge increased Mr. Gomez’s offense level by two levels for attempted obstruction of justice. U.S.S.G. § 3C1.1. Mr. Gomez contends that was error.
A
The enhancement springs from Mr. Gomez’s motion to suppress statements he made to DEA agents on September 3, 2010. The agents asked Mr. Gomez his name, address, and telephone number, and he provided that information to them. Mr. Gomez didn’t testify at the suppression hearing, but relied on his affidavit in which he swore that the agents stopped him by blocking his path with their vehicle as he walked near his home a bit after noon. Mr. Gomez said one of the agents got out of the car and pointed a gun at him, telling him “don’t move,” leaving Mr. Gomez with the belief that he was not free to leave or resist the agent’s commands. Mr. Gomez stated, “under penalty of perjury,” that the agents searched his wallet, removed his identification, and commanded him to verify the information on the identification and give them his telephone number. Mr. Gomez said the agents then left the scene. The two agents testified at the hearing; their testimony was at odds with Mr. Gomez’s affidavit statement.
At the close of the hearing, the court denied the suppression motion. The judge found that the agents had used a ruse to stop Mr. Gomez, but there was nothing improper about their doing so. Special Agents Charles Amell and Enrique Carlton testified at the hearing about their encounter with Mr. Gomez, and at the end of the hearing the judge found that the officers had not arrested Mr. Gomez. The judge credited the officers’ testimony that they had not blocked Mr. Gomez’s path with their car and hadn’t drawn any weapons. Instead, they had employed a ruse, which was permissible, and had a brief, consensual encounter with Mr. Gomez in which they collected Mr. Gomez’s name, address, and phone number. The phone number Mr. Gomez gave the agents was one of the numbers used during the conspiracy.
At the sentencing hearing, Mr. Gomez’s attorney objected to any enhancement for attempted obstruction of justice, arguing that Mr. Gomez had given his affidavit nearly a year after the encounter it described, that conflicting testimony doesn’t always show that someone is committing perjury, and that the law shouldn’t punish a defendant for using the opportunity to testify. In response, the government argued that Mr. Gomez’s affidavit was not based on a faulty memory, but, rather, was designed to prevent the government from using the phone number to tie him to the conspiracy recordings.
The court overruled the objection and applied the two-level enhancement, explaining:
The court finds that based upon the attempt to remove himself from the par *1158 ticipation in this offense, the defendant did present a false affidavit with an attempt to escape responsibility for his actions. The court finds that the obstruction of justice enhancement is proper and allowable and would deny the defense motion to modify the court’s determination that the enhancement is proper and would find that the government has sustained its burden of explaining to the court and the evidence satisfied the court that there was an attempt by the defendant to escape responsibility for his conduct by this false affidavit.
Sent. Tr. at 16.
B
The government and Mr. Gomez appear to agree that perjury at a suppression hearing amounts to attempted obstruction of justice within the meaning of U.S.S.G. § 3C1.1. Mr. Gomez complains that the district court’s comments were insufficient to amount to a finding of perjury.
“A defendant commits perjury ‘if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.’ ” United States v. Grigsby, 692 F.3d 778, 785 (7th Cir.2012) (quoting United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)). “A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed. The statement need not actually affect the decision.” Grigsby, 692 F.3d at 785 (emphasis in original; quotation and citation omitted). “For an obstruction of justice enhancement to apply, the government must establish by a preponderance of the evidence that the defendant had the specific intent to obstruct justice.” United States v. Nurek, 578 F.3d 618, 623 (7th Cir.2009). “A defendant’s deliberate attempt to mislead the court implicates the basic purpose of the obstruction enhancement, whether it occurs during a plea hearing, at trial, or at some other point in the criminal process.” Grigsby, 692 F.3d at 785.
Mr. Gomez contends that the district court did not identify the statement on which the obstruction finding was based or explain its materiality. Mr. Gomez doesn’t dispute the government’s contention that since the only issue Mr. Gomez raised at the sentencing hearing was willfulness, this court reviews the sufficiency of the findings with respect to the other elements of perjury under a plain error standard. United States v. Galbraith, 200 F.3d 1006, 1013 (7th Cir.2000).
This record allows no room for doubt about which statements the sentencing judge had in mind. At the sentencing hearing, the government identified two false statements in Mr. Gomez’s affidavit: (1) that the agents pulled their vehicle onto the sidewalk where Mr. Gomez was walking to block his path, and (2) one agent pulled a weapon and pointed it at Mr. Gomez. At the suppression hearing, the court explicitly found those statements were false: “[T]he court finds specifically that the officers’ testimony was compelling that they did not use their vehicle to block his path, they did not have their weapons drawn.” Supp. Tr. at 76. The government also explained at the sentencing hearing how those affidavits statements were material: the telephone number that would have been suppressed was one of the numbers Mr. Gomez used during the period of the conspiracy and was intercepted over the wiretaps.
“[T]o impose the obstruction enhancement, the district court must make *1159 independent findings necessary to establish all of the three factual predicates for a finding of perjury (false testimony, materiality, and -willful intent).... If the court fails to address each element clearly, the enhancement will withstand scrutiny if the court makes a finding that encompasses all of the factual predicates for the finding of perjury.” United States v. Savage, 505 F.3d 754, 763 (7th Cir.2007) (quotation and citation omitted).
The court found at the sentencing hearing that Mr. Gomez had tendered a false affidavit in an attempt “to remove himself from participation in this offense” and “to escape responsibility for his actions.” Sent. Tr. at 16. The court also found that the government had “sustained its burden” of pointing to evidence establishing that Mr. Gomez’s submission of the false affidavit supported an obstruction of justice enhancement. Sent. Tr. at 16. “When read in context and in their entirety, the court’s remarks on the application for the obstruction enhancement contain an implicit finding that [Mr. Gomez] intended to obstruct the prosecution. That is enough to sustain the two-level enhancement.” United States v. Nurek, 578 F.3d 618, 624 (7th Cir.2009); see also United States v. Savage, 505 F.3d 754, 764 (7th Cir.2007) (“The lack of more precise findings on the enhancement does not warrant remand for resentencing.”).
The district court’s conclusion that Mr. Gomez’s affidavit statements were false and were intended to affect the outcome of the case wasn’t clearly erroneous, and Mr. Gomez hasn’t shown any error that affected his substantial rights or seriously affected the fairness or integrity of the proceedings. United States v. Robinson, 663 F.3d 265, 268 (7th Cir.2011).
III
The district court didn’t abuse its discretion in admitting the September 29 evidence under Rule 404(b) and didn’t commit plain error in enhancing Mr. Gomez’s offense level for attempted obstruction of justice. We affirm Mr. Gomez’s conviction and his sentence.
Affirmed.